## The Denver & Rio Grande Railroad Company v. Cahill.

1. JURISDICTION—VENUE.

The jurisdiction of courts of record in civil actions is coextensive with the state, and where an action is brought in a county other than that in which it should be tried, the defendant's only remedy, if he objects to the venue, lies in an application to remove the case to the proper county.

2. SAME.

Upon sufficient application by the defendant, made within the proper time, to change the place of trial, on the ground that the county designated in the complaint is not the proper county, the duty of making the change becomes mandatory upon the court, and its jurisdiction is divested, except for the purpose of making the order of removal.

3. SAME.

In an action for a tort, the county where the defendant resides, and the county where the plaintiff resides and the defendant is served, and the county where the tort was committed, are equally proper counties for trial; and if the action is commenced in any one of these counties, the place of trial cannot be changed on the ground that the county designated is not the proper county.

4. SAME.

The several sections of the code relating to the place of trial of civil actions are construed in the opinion.

5. CHANGE OF VENUE, WHEN DISCRETIONARY.

An application to change the place of trial, on the ground that the convenience of witnesses and the ends of justice would be thereby promoted, is addressed to the discretion of the court, and its decision of the question will be accepted upon review as final, unless an abuse of discretion is apparent.

6. WAIVER—DEPARTURE.

The objection that the averments in the replication constitute a departure from the cause of action stated in the complaint must be taken before trial, or it is waived.

7. DEPARTURE DEFINED.

A " departure " is an abandonment of the cause of action stated, in some essential particular, and the substitution of something materially different.

8. WAIVER—IRREGULAR PLEADINGS.

The complaint was defective by reason of the omission of a material allegation, which was inserted in the replication. The defendant having acquiesced in the irregularity, is held to have waived it.

9. RAILROADS—PLEADING.

By the terms of the constitution, all railroad companies in this state are common carriers. An averment that a party to a suit is a railroad company is equivalent to an averment that it is a common carrier.

10. PLEADING—AIDER.

A defective complaint may be aided and the omission supplied by the answer.

11. NONSUIT—VARIANCE.

Where the proof is substantially variant from the averments of the complaint, the defendant's motion for a nonsuit should be sustained.

*Appeal from the District Court of Montrose County.*

Messrs. WOLCOTT & VAILE and Mr. WM. W. FIELD, of counsel, for appellant.

Mr. JOHN GRAY, for appellee.

ON REHEARING.

THOMSON, J., delivered the opinion of the court.

This action was brought by the appellee against the appellant to recover damages for injuries to stock in its charge,

occasioned by its negligence, and that of its agents and employés. The complaint alleges that on the 18th day of July, 1890, the defendant received from the plaintiff, for shipment over its road, three stallions, at Pueblo, Colorado; and that while they were in its charge and loaded upon its cars at Pueblo, they received severe injuries by reason of the willful and grossly negligent acts of the company, its agents and employés; and that one of them was so hurt that he subsequently died. It was alleged that the defendant was a corporation at the time of bringing the suit, but not that it was such at the time the cause of action arose, a year and a half before.

The defendant moved for a change of venue to Pueblo county, on the grounds, first, that it appeared from the complaint that the cause of action arose in the latter county; and, second, that the convenience of witnesses and the ends of justice would be promoted by the change. This motion having been denied, the defendant demurred to the complaint for want of sufficient facts to constitute a cause of action. The demurrer was overruled. The defendant then answered, first, denying every allegation of the complaint except that it was a corporation; second, alleging that the stallions were brought to Pueblo from Denver by the Burlington & Missouri River Railroad Company, and that the injuries were received while they were in the cars of the latter company, and before they were delivered to the defendant; and, third, setting up a written contract, dated July 18, 1890, in pursuance of which the defendant undertook to transport the horses from Pueblo to Ouray, averring that the plaintiff did not comply with its terms, and denying that the stock received any injury while in the defendant's charge under that contract. A nonsuit, asked when the plaintiff rested his case, was refused. The plaintiff had a verdict for $1,941, and after denial of a motion to set the verdict aside, judgment was entered accordingly, from which the defendant appealed.

The several rulings of the court which we have mentioned,

as well as certain of its rulings in the course of the trial, and its giving and refusal of instructions, are brought in question on this appeal.   We do not think the court erred in denying the change of venue asked.   Code, section 25, provides that certain actions in relation to real property shall be tried in the county in which the subject of the action, or some part thereof, is situated.   By the terms of section 26, actions for the recovery of a penalty or forfeiture imposed by statute, and against a public officer for an act done by him in virtue of his office, or for a failure to perform an act or duty which he is by law required to perform, shall be tried in the county in which the cause of action or some part thereof arose.   The provisions of the foregoing sections are by their terms subject to the power of the court to change the place of trial as elsewhere provided in the act.   The following is section 27, upon which the defendant relies:

" In all other cases the action shall be tried in the county in which the defendants, or any of them may reside at the commencement of the action, or in the county where the plaintiff resides when service is made on the defendant in such county. * * * Actions on book accounts or for goods sold and delivered, may be tried in the county where the plaintiff resides or in the county where the goods were sold. Actions upon contracts may be tried in the county in which the contract was to be performed; actions upon notes or bills of exchange in the county where the same are made payable; and actions for torts in the county where the tort was committed, subject however to the power of the court to change the place of trial as provided in this act."

Section 29 provides that the court may, on good cause shown, change the place of trial in the following, among other, cases: First, when the county designated in the complaint is not the proper county; and, second, when the convenience of witnesses and the ends of justice would be promoted by the change.

The code provisions that certain classes of actions shall be tried in certain counties, taken in connection with the pro-

visions for change of place of trial, have been the subject of construction both in the supreme court and this court. It has been held that the jurisdiction of courts of record is coextensive with the state, and that where an action is brought in a county other than that in which it should be tried, the defendant's only remedy, if he objects to the venue, lies in an application to remove the case to the proper county. *Fletcher v. Stowell*, 17 Colo. 94; *Wasson v. Hoffman*, 4 Colo. App. 491. But while the action may be brought in any county, at the election of the plaintiff, yet, upon sufficient application by the defendant, made within the proper time, to change the place of trial of the cause, on the ground that the county designated in the complaint is not the proper county, the duty of making the change becomes mandatory upon the court, and its jurisdiction is divested, except for the purpose of making the order of removal to the proper county. *Smith v. The People*, 2 Colo. App. 99; *Pearse v. Bordeleau*, 3 Colo. App. 351. Now, it is contended that this rule is applicable to the case at bar, by virtue of the provision in section 27 that actions for torts may be tried in the county in which the tort was committed. A construction must be given to this section which makes it consistent with itself. The first portion of the section, providing where a certain class of actions shall be tried, is a complete sentence, and includes every action of that class. It is intended as the statement of a general rule, which, however, is modified in particular instances by the succeeding portions of the section. If, as counsel argue, the word "may," as used in the latter connection, must be held to mean "shall," then the effect of the section would be that in all cases of the class referred to the action *shall* be tried in the county in which the defendant resides, or in the county in which the plaintiff resides if service shall be had upon the defendant in that county; but that in some of them the action *shall not* be tried in either county. Such a construction would involve a flat contradiction between different parts of the same section, and for that reason, if for no other, is not to be accepted. In our opinion,

the meaning of the section is that the counties designated in the first sentence of the section are proper counties for the trial of all cases except those enumerated in the two preceding sections; but that where the action is for goods sold and delivered, or upon a contract, or upon a note or bill of exchange, or for a tort, the county where the goods were sold, or the contract was to be performed, or the bill of exchange was made payable, or the tort was committed, is also a proper county for trial. In an action for a tort, which is this case, the county where the defendant resides, and the county where the plaintiff resides and the defendant is served, and the county where the tort was committed, are equally proper counties for trial; and if the action is commenced in any one of those counties, the place of trial cannot be changed on the ground that the county designated is not the proper county.

The other ground of the motion, namely, that the convenience of witnesses and the ends of justice would be promoted by the change, was supported by the affidavit of Cromwell Tucker, the freight claim agent of the defendant. He gave the names of no witnesses, and did not state what any witness would testify to, or that the testimony of any witness would be material to any issue in the case. He simply said that it would be necessary for the defendant to produce numerous witnesses, nearly all of whom were residents of Pueblo county, some in the defendants' employ, and some not; and that it would be a great hardship upon the defendant, and interfere with its business as well as the business of witnesses, if the defendant was compelled to take them to Montrose county. This was the only showing in support of the second ground of the motion, and we think it was insufficient. It does not appear from the affidavit that there was a single one of the alleged witnesses who knew anything about the case, or whose testimony would be of the least benefit to the defendant; nor does it appear who any of them were. This affidavit, such as it was, was met by a counter affidavit, at least equally good, in which the plaintiff attempted

to show that the convenience of his witnesses demanded the retention of the case in Montrose county. If both affidavits had properly set forth the facts, we should accept the court's decision of the question as final, unless an abuse of its discretion was apparent. *Reavis v. Cowell*, 56 Cal. 588. We do not know whether the court refused to change because it regarded the defendant's affidavit as insufficient, or because it was offset by the other, but in either case there was no error in its ruling.

One of the objections made to the complaint is that it does not aver that the plaintiff was the owner of the property. This objection would have been fatal if the defendant had stood upon its demurrer; but it answered, and the plaintiff incorporated an allegation of ownership in his replication. This allegation, necessary to the statement of a cause of action, could not properly appear for the first time in the replication, and it would have been stricken out on motion of the defendant. But the record does not show that objection was made to it in any form, and the question is whether the defect of its omission in the complaint was cured by its insertion in the replication. Where averments in the replication constitute a departure from the cause of action stated in the complaint, the objection must be taken before trial, or it is waived. *Kannaugh v. Quartette Mining Co.*, 16 Colo. 341. The term "departure" supposes a good complaint; and a departure is an abandonment of the cause of action as stated, in some essential particular, and the substitution of something materially different. But the complaint before us does not state a cause of action; hence the replication is not a departure, and it is contended that the rule which obtains in the case of a departure is inapplicable. But when we consider the reason for the rule, the distinction which counsel seek to draw between the two cases is not evident. The effect of a departure is to eliminate a material averment from the complaint. Without the averment the complaint would not be good; but combining the remaining allegations of the complaint with the substituted allegation of the

replication, there is still a complete statement of a cause of action. Now, where a portion of the cause of action is suffered to appear in the replication, what is the difference, in principle, whether it is a substitution for something which the complaint at first contained, or is an original statement of something concerning which the complaint was silent? In either case the cause of action is to be found in the complaint and replication together, and a defendant who has failed to make his objection within the proper time is not prejudiced in any greater degree where the replication supplies some statement which was wanting in the complaint than where the new allegation is a substitution for something which the complaint contained.

But we may look at the question from another point of view. The plaintiff could have confessed the demurrer and amended his complaint. This would have been proper, and not the subject of objection. However, instead of doing this, he incorporated the necessary averment in his replication. This was improper, and, upon objection made, would not have been allowed; but it was not objected to. The result was that the case went to trial upon a statement of a cause of action as complete as if the originally omitted allegation had been supplied by amendment to the complaint; and, the defendant having acquiesced in the irregularity, presumably because it did not consider itself injured by it, we see no good reason why it should not be held to have waived it.

Another point made is that the complaint does not contain an allegation that the defendant was a corporation and common carrier at the time the damage was sustained. We do not think it was necessary to allege that the defendant was a common carrier, because, first, the complaint avers an injury done by the defendant to the plaintiff's property while the property was in its charge, in such manner and under such circumstances as to create a liability against it, whether it was a common carrier or not; and, second, by the terms of section 4, article 15, of the constitution, all railroad companies in this state are common carriers; and an averment that a

party to a suit is a railroad company would be equivalent to an averment that it is a common carrier. But it ought to have been alleged that the defendant was a corporation when it took the plaintiff's property for shipment, and on account of the absence of that allegation the complaint was defective. We think, however, that the answer supplied the omission. It admits the delivery to the defendant company of the stock described in the complaint, to be by it transferred from Pueblo to Ouray, and sets forth the contract of shipment, which was in writing, in full. In the contract the defendant describes itself as a common carrier, and although it is not expressly stated to be a corporation, the contract is a contract of a corporation; and it is entirely evident from its language and the manner of its execution that in making the agreement, and undertaking to transport the property, the defendant was assuming to act as a corporation. The defendant did not stand upon its objection to the complaint, and inasmuch as it answered setting forth facts from which its corporate character is a necessary inference, and which are inconsistent with any supposition except that of its due incorporation, we do not think the objection can now be entertained.

The proof was that the plaintiff delivered the horses to the Burlington & Missouri River Railroad Company at Creston, Iowa, to be transported to Ouray, Colorado. That company brought them to Denver, where the car containing them was transferred to the track of the defendant, and taken to Pueblo. The track over which the car had thus far passed was broad gauge, but the defendant's track from Pueblo to Ouray was narrow gauge, so that, to take the animals to their destination, it was necessary to transfer them from a broad gauge to a narrow gauge car. The train was taken to the Pueblo stock yards, for the purpose of making the transfer, and, while in transit, some switching was done, apparently for the purpose of dropping out some of the cars, and attaching others. In undertaking to couple a narrow gauge car to the Burlington car, the connection was in some way missed, and the two cars came violently together, breaking

in the end of the Burlington car, thus causing the injuries complained of. After the evidence for the plaintiff was all in, the defendant unsuccessfully moved the court for a nonsuit, on the ground that the proof did not conform to the pleadings. The result of the trial was a verdict and judgment for the plaintiff, and the defendant has brought the case here by appeal.

The variance which the record shows between the allegations and the proof presents a more serious question than any involved in the other objections which we have considered. The complaint advised the defendant that the plaintiff would prove that after the defendant had received his horses at Pueblo, and after they had been loaded upon its own car, they suffered injuries for which he was entitled to damages; but what he in fact proved when the case came to trial was that his horses were injured before they were received by the defendant at Pueblo, and before they were loaded upon its car, and while they were still in the car of the Railroad Company which had received them at Creston, Iowa. Here was a variance of a material character. The plaintiff, in the course of his testimony, said that the horses were taken by the Burlington road to Denver, and that they were there transferred to the defendant's track and taken by the defendant to Pueblo, so that at the time of the injury they were in its charge. Upon our first examination of the case, we were of the opinion that the testimony, which no witness contradicted, that the horses after leaving Denver were in charge of the defendant, justified the trial court in disregarding the variance, because, although the circumstances proved differed from those alleged, yet it appeared that the injuries testified to and those sued for were identical, and were the result of the negligence of the defendant, or those for whom it was responsible; and the mere fact that the accident occurred before, instead of after, the transfer of the horses from the broad gauge to the narrow gauge car, did not affect the liability of the defendant, or work it any harm in making its

defense.  Concerning the general principle upon which our decision of the question was made, our opinion has undergone no change; but upon looking more closely into the nature of the difference between the allegation and the proof, we believe that the principle is not applicable, and so feel compelled to reconsider our judgment.  Unless the train on board of which the horses were injured was under the control of the defendant, the plaintiff had no cause of action against it; and the question whether the defendant had charge of that train, or was in any wise responsible for its management, was neither directly nor remotely involved in the issues as they were framed.  The issues were well defined.  It was alleged by the plaintiff, and denied by the defendant, that when the horses were hurt, they had been loaded on the defendant's car.  The defendant had nothing to look to but the plaintiff's pleadings to find the charge which it had to meet, and while it is probable that the only injuries received by the horses were those which the proof showed, whether the defendant was answerable for the injuries as they actually occurred depends upon the degree of its control of the car or cars containing the horses, and of the persons who caused the collision.  While it had notice to prepare itself to show that the horses were not injured through its negligence while they were on its own cars, it had no notice to provide itself with proof against liability on account of an accident occurring on the cars of another company.  It could not be supposed, and it was not required, to anticipate evidence of a transaction which, for the purpose of ascertaining the degree of responsibility it was chargeable with, would involve an inquiry outside of the cause of action as stated.  Possibly the defendant might have been able to show that when the injuries were received the horses were in the sole charge of the Burlington Company; but there was nothing in the plaintiff's pleadings from which it could be inferred that such proof might be necessary.  The introduction of the evidence was properly and persistently resisted

by the defendant, and its motion for a nonsuit should have been allowed. It was error to submit the case to the jury, and the judgment will be reversed and remanded with leave to the plaintiff to amend his complaint.

*Reversed.*